IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NATIONWIDE MUTUAL FIRE INSURANCE CO., | : :| |
| | : | CIVIL ACTION |
| Plaintiff, | : : | NO. 10-2410 |
| v. | : : | |
| FRANCIS MALOFIY, | : : | |
| Defendant. | : | |

# OPINION

**Slomsky, J.**                                                                                                          **March 22, 2011**

## I.    INTRODUCTION

On August 16, 2008, Defendant Francis Malofiy was a patron at Liberty Bar located at 2204 Market Street, Philadelphia, Pennsylvania. While at the Bar, Malofiy was involved in a physical altercation with another patron, Dante Troiani. The circumstances giving rise to this altercation are heavily disputed. It is undisputed, however, that the altercation culminated with Malofiy striking Trioani on his head and face with a beer glass, causing severe injuries.

Following the incident, Defendant Malofiy was arrested by the Philadelphia Police and charged with aggravated assault, simple assault, recklessly endangering another person, and possession of an instrument of a crime ("Underlying Criminal Action"). Malofiy was also sued civilly as a result of the incident. Trioani filed a civil action against Malofiy, Liberty Bar and its owners in the Court of Common Pleas of Philadelphia County, <u>Troiani v. Malofiy et al.</u>, No. 09-1162 ("Underlying Civil Action"). After the Underlying Civil Action was filed, Malofiy made a claim with his parents' homeowners insurance company, Nationwide Mutual Fire Insurance

Company, seeking to have Nationwide defend and indemnify him in the Underlying Civil Action. Coverage was sought under the personal liability section of the policy. Nationwide, in turn, filed a declaratory judgment action in this Court. Plaintiff Nationwide Mutual Fire Insurance Company seeks a declaration here that it does not have a duty to defend or indemnify Malofiy in the Underlying Civil Action.

On November 29, 2010, Plaintiff filed a Motion for Judgment on the Pleadings in this case (Doc. No. 21), claiming again that it has no duty to defend or indemnify Malofiy in the Underlying Civil Action. Malofiy filed a Response and opposing brief on December 21, 2010 (Doc. Nos. 25, 26). On February 9, 2011, the Court held oral argument on the Motion. At the hearing, the Court granted the parties leave to file supplemental briefs and they did so. (Doc. Nos. 29, 31).

Upon consideration of the Motion and Response, the briefs filed by the parties in support of or in opposition to the Motion, and the arguments of counsel at the hearing, the Court will grant the Motion for Judgment on the Pleadings and enter judgment that Plaintiff has no duty to defend or indemnify Malofiy in the Underlying Civil Action.

## II. FACTUAL BACKGROUND

### A. Complaint for Declaratory Judgment[1]

Plaintiff Nationwide Mutual Fire Insurance Company issued a Homeowner's Insurance Policy (the "Policy") (Doc. No. 3-1) to Alexander and Pauline R. Malofiy, parents of Defendant.

---

[1] The Complaint in the instant action was filed on May 21, 2010. On June 25, 2010, Malofiy filed a Motion to Stay the proceedings pending the disposition of the Underlying Criminal Action. (Doc. No. 8.) On August 26, 2010, since the Underlying Criminal Action had been concluded, the Court denied the Motion to Stay as moot. (Doc. No. 13.) On October 21, 2010, Malofiy filed an Answer to the Complaint. (Doc. No. 19.)

The Policy provides coverage for damages an insured[2] becomes legally obligated to pay due to an "occurrence," as defined in the Policy. (Id. ¶ 15.) Occurrence is defined as "bodily injury or property damage resulting from an accident." (Id. ¶ 17.) According to Plaintiff, since Malofiy is being sued for his intentional acts, any damages he becomes legally obligated to pay in the Underlying Civil Action are not a result of an "occurrence," or an accident. Accordingly, Plaintiff claims that Defendant is not covered by the Policy. (Id. ¶¶ 20-23.) In this Court, Plaintiff, in effect, seeks a declaration through the Motion for Judgment on the Pleadings that, pursuant to the terms of the Policy, it has no duty to defend or indemnify Malofiy in connection with the Underlying Civil Action.[3]

B. **The Underlying Civil Action**

The facts regarding the August 16, 2008 incident at Liberty Bar are heavily disputed. However, because only those facts which are contained within the "four corners" of the complaint in the Underlying Civil Action (the "Underlying Complaint") (Doc. No. 3-3) may be

---

[2] There is no dispute that Defendant Malofiy, as a "relative" living at the residence of the insureds (Mr. and Mrs. Malofiy), is also an insured covered by the policy. (See Doc. No. 3-1.)

[3] The Complaint contains three counts. Each Count pleads a different theory in support of the claim that the Policy does not provide coverage to Malofiy in the Underlying Civil Action. In addition to the claim set forth above concerning the absence of an "occurrence," which is contained in Count One, Plaintiff makes two additional claims in Counts Two and Three which allege that even if Malofiy's acts rise to the level of an "occurrence," they are still specifically excluded from coverage either because they are intentional acts — Count Two (Doc. Nos. 1 ¶¶ 26-28; 3-1 at 28), or because they are criminal in nature — Count Three (Doc. Nos. 1 ¶¶ 31-38; 3-1 at 28).

considered in determining whether an insurer has a duty to defend, the Court will consider here only the facts contained in the Underlying Complaint.[4]

On the evening of August 16, 2008, Trioani and Malofiy were patrons at the Liberty Bar, owned and operated by James P. Panaos and Paraskevi V. Pananos ("defendant Bar Owners"), who are named defendants in the Underlying Civil Action. The Underlying Complaint alleges that defendant Bar Owners and/or their agents "negligently, wantonly, willfully and recklessly sold and served alcoholic beverages" to Malofiy, who was "obviously in a visibly intoxicated condition." (Doc. No. 3-3 ¶¶ 15-20.) Malofiy, while in this inebriated state, "did strike [Trioani], with great force, with a beer glass, causing severe blows to [Trioani's] head, face and other parts of his body causing [Trioani] to sustain the severe, disfiguring and disabling personal injuries set forth at length." (Id. ¶ 20.)

The Underlying Complaint contains two counts. Count One alleges negligence against defendant Bar Owners and defendant Liberty Bar for "negligent, careless, willful, wanton and reckless actions, inactions and disregard" in serving and permitting their agents to serve Malofiy

---

[4] In State Farm Fire & Casualty Co. v. Mehlman, the Third Circuit reviewed a district court's grant of summary judgment in favor of an insurer. 589 F.3d 105 (3d Cir. 2009). The district court entered judgment that the insurer had no duty to defend or indemnify the insured in an underlying civil action brought by a third party. (Id. at 107.) The Third Circuit affirmed the district court's judgment that insurer had no duty to defend. (Id. at 116.) In a footnote in the Opinion, the Third Circuit explained:

> We base our factual recitation solely on the allegations in Iacono's amended complaint in the Underlying Action, even though there was discovery in this coverage case in which more germane facts may have surfaced, because an insurer's duty to defend an action against its insured is initially measured on the basis of the allegations of the pleadings in the complaint against the insured.

Id. at 108 n.3 (citing Donegal Mut. Ins. Co. v. Baumhammers, 938 A.2d 286, 290-91 (Pa. 2007)).

intoxicating beverages. (Id. ¶¶ 23-29.) Count Two alleges battery against Malofiy. (Id. ¶¶ 30-38.) The Underlying Complaint states:

> 31. Defendant Francis Malofiy struck Plaintiff [Trioani] in and about the head and face and body wantonly, recklessly and with the malicious intent to injure Plaintiff and with absolute disregard for Plaintiff's health, safety and welfare.
>
> 32. The action of Defendant Francis Malofiy in striking plaintiff caused harmful and offensive contact with Plaintiff which was committed with the intent to cause Plaintiff to suffer such harmful and offensive contact, and this constituted a battery as a matter of Pennsylvania law.
>
> 33. The harmful and offensive contact caused by Defendant Francis Malofiy was not consented to by Plaintiff, was without provocation of any kind, and was not otherwise privileged.

(Id. ¶¶ 31-33.)

Count Two further alleges that "as a direct and proximate result of the negligent, careless, willful, wanton, reckless, outrageous and unlawful conduct and disregard by the said Defendants," Trioani has suffered severe injury. (Id. ¶¶ 34-38.) In the prayer for relief contained in Count Two, Trioani requests punitive damages "for the willful, reckless, wanton, outrageous, unlawful conduct and disregard of the rights of the Plaintiff by the said Defendant herein."

### C. Underlying Criminal Action

Separate from the Underlying Civil Action, but related to the August 16, 2008 incident, Malofiy was arrested and charged with Aggravated Assault, Simple Assault, Possession of an Instrument of Crime, and Recklessly Endangering Another Person. Beginning on August 12, 2010, Malofiy was tried before a jury. On August 19, 2010, the jury returned a verdict of not guilty on all counts. In the Underlying Criminal Action, Malofiy testified that he was acting in self-defense when he struck Trioani. According to Malofiy, Trioani, the "main aggressor," and

his friends began harassing Malofiy's girlfriend, Ms. Gallagher. Malofiy attempted to verbally defend his girlfriend, directing Trioani to leave her alone.

However, the situation escalated and Malofiy decided that he and Ms. Gallagher should leave. At this point a physical altercation between Malofiy and Trioani ensued. As Malofiy testified at his criminal trial:

> "Eventually, at that point, I was about ready to leave. Then he [referring to Trioano] came over, reached his hand over and he came up to my face like this (indicating), said, listen, it's cool, I'm being an asshole. . . . and I said, no, it's not cool at all. . . . At that point, I just wanted to diffuse the situation, and I grabbed his hand and said, okay, it's over, forget it. And I shook his hand. . . . Immediately after that, more insults were being hurdled back and forth, and there was a person behind me who was saying things also derogatory. At that point, I became very concerned. My girlfriend at that point said to me - - at this point, she said she was inappropriately touched and said she wanted to leave. At that point, I was scared and very concerned for my safety and also for the safety of my girlfriend, and I said, that's it, we're out of here; and I motioned to her on it.
> . . .
> A.  I wasn't able to leave. As soon as I attempted to leave and after she told me she was inappropriately touched, I said, we're leaving. At that point Mr. Trioani came over, and right after he apologized, came over right in my face and said, f*** you, p***y, and started making comments like this in a real aggressive manner. . . . As I started to walk out I realized the whole situation was escalating. I was scared and concerned. When I started to come around, Mr. Trioani then, after calling me a c**t and a p***y and putting his finger in my face, put his hand up to my head, to my bandana, and said, what's a dirty Spic like you doing with that white b**ch.
> . . .
> Q.  Mr. Malofiy, as you then approached to go down the aisle past the bar to the front door, what, if anything, happened per your recollection?
> A.  Well, Mr. Trioani struck me twice right in my chest, took my wind out of me. I was scared.
> Q.  How did he hit you or strike you in the chest?
> A.  With his fist like (indicating) twice like this and knocked my wind out because it hit my solar plexus.
> . . .
> Q.  What did you do?

6

| | |
|---|---|
| A. | I tried to push – after being hit. I tried to push through at that moment. When the fists [referring to the fists of Trioani and his friends] kept on getting closer, literally, right on my face to strike, at that point, I was very scared and didn't know what to do and just reacted in self-defense and punched Mr. Trioani in his face as hard as I could. |
| Q. | When you punched him, did you know whether you had anything in your hand? |
| A. | I didn't know I had anything. My intention wasn't to get into a fight. It was to leave. |
| Q. | Did you have something in your hand? |
| A. | After reviewing the video, yes, I did, I had something in my hand, a glass. |
| Q. | How many times did you hit Mr. Trioani? |
| A. | I struck him one time in the face. |
| Q. | And your reason for hitting him at that point was? |
| A. | He had already hit me twice, blocked my exitway. I was scared for my safety and my girlfriend's safety, and his friends had just yelled fight and came up to me with fists drawn. I thought I had no other option to get out and I couldn't push through him. |
| Q. | After you hit him the one time, what did you do next, if anything? |
| A. | Grabbed his shirt immediately thereafter. |
| Q. | Why did you grab him as opposed to just walking ahead? |
| A. | Because I wanted to make a pathway. I was trying to get just, you know, it's instinctive. It all happened so fast. I guess I was just trying to push him out of the way to be able to walk by and, I guess have Ms. Gallagher walk by too. |
| Q. | Did you have any sort of hold after you grabbed his shirt, that is, Mr. Trioani, any sort of hold after you grabbed his shirt? |
| A. | Immediately after I struck him, I grabbed his shirt. Then I put him in a chokehold like this (indicating). |

(Doc. No. 26, Exhibit "X", Criminal Trial Transcript at 188:15– 200:13.)[5]

---

[5] For reasons described below, the Court will not consider this evidence in deciding the Motion for Judgment on the Pleadings.

### D. The Policy

Plaintiff issued a Homeowner Insurance Policy (the "Policy") for the period July 17, 2008 to July 17, 2009 to Alexander and Pauline R. Malofiy, Defendant's parents. (Doc. No. 1 ¶ 14; Doc. No. 3-1.) The Policy provides:

> [Plaintiff] will pay damages an insured is legally obligated to pay due to an *occurrence* resulting from negligent personal acts . . . . [Plaintiff] will provide a defense at our expense by counsel of our choice.

(Doc. No. 1 ¶ 15; Doc. No. 3-1 at 25 (emphasis added).)

Excluded from coverage is bodily injury resulting from "an act intending to cause harm done at the direction of any insured," or "from an act or omission which is criminal in nature and committed by an insured . . . regardless whether insured is actually charged with, or convicted of a crime." (Doc. No. 1 ¶ 16; Doc. No. 3-1 at 28.) The Policy contains the following definition of key terms:

> **Bodily Injury** – bodily harm, including resulting care, sickness or disease, loss of services or death. Bodily Injury does not include emotional distress, mental anguish, humiliation, mental distress or injury, or any similar injury unless the direct result of bodily harm.
>
> **Occurrence** – bodily injury or property damage resulting from an accident, including continuous or repeated exposure to the same general condition. The occurrence must be during the policy period.
>
> **Insured** – means you and the following persons if residents of your household at the residence premises: your relatives.

(Doc. 1 ¶ 17; Doc. No. 3-1 at 25.)

E.  **Plaintiff's Motion for Judgment on the Pleadings**

Plaintiff moves for judgment on the pleadings seeking a declaration that it has no duty to defend Malofiy in the Underlying Civil Action because the Underlying Complaint alleges that the bodily injury Malofiy inflicted on Trioani was intentional.  The Policy provides coverage for damages the insured becomes legally obligated to pay due to an occurrence.  An occurrence is bodily injury resulting from an accident.  Plaintiff asserts that the factual allegations in the Underlying Complaint describe an intentional act.  An intentional act is not an accident and therefore not an "occurrence" as defined by the Policy.  Since the incident alleged in the Underlying Complaint is not an occurrence, there is no coverage for any amount Malofiy becomes legally obligated to pay in the Underlying Civil Action.  Therefore, according to Plaintiff, it has no duty to defend.[6]

---

[6] Plaintiff submits three additional arguments in support of the Motion, which are based on the terms of the Policy.  They are:

> (1) Even if the Court finds that the bodily injury resulted from an occurrence, the occurrence is specifically excluded by the "intentioned harm exclusion."  This exclusion excepts from coverage bodily injury caused by "an act intending to cause harm done at the direction of any insured."  (Doc. No. 3-1 at 28.)
>
> (2) Even if the Court finds that the bodily injury resulted from an occurrence, the occurrence is specifically excluded by the "criminal acts exclusion."  This exclusion states that the Policy does not provide coverage for bodily injury "caused by or resulting from an act or omission which is criminal in nature and committed by the insured" and applies whether or not "the insured is actually charged with or convicted of a crime."  (Doc. No. 3-1 at 28.)
>
> (3) Providing a defense for Malofiy in the Underlying Civil Action would violate public policy because it would relieve Malofiy of personal accountability for his wrongdoing.

Since the Court finds that the incident alleged in the Underlying Complaint is not "bodily injury . . . resulting from an accident," and therefore is not an occurrence covered by the Policy,

In response, Malofiy contends that the factual allegations in the Underlying Complaint describe a negligent or reckless act to which the Policy *potentially* applies. Therefore, Plaintiff has a duty to defend. Further, the facts in the Underlying Civil Action are highly contested and evidence presented at Malofiy's criminal trial shows he acted in self-defense. Malofiy claims that reactionary, instinctive actions done in self-defense are unintentional and therefore potentially accidental, making bodily injury resulting from such acts potentially covered by the Policy and triggering a duty to defend. In support of this contention, Malofiy submits a portion of the transcript from the Underlying Criminal Action where he testifies regarding the August 16, 2008 incident as an Exhibit to his Response to the Motion for Judgment on the Pleadings. (Doc. No. 26, Ex. X.) A critical passage of that testimony is quoted *supra*.

## III. STANDARD

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In deciding a motion for judgment on the pleadings, a court must consider only those documents contained in the pleadings.[7] Moco

---

the Court will not address the merits of the arguments concerning the intended harm exclusion, the criminal acts exclusion, or an exclusion based on public policy.

[7] In this case, the pleadings include Plaintiff's Complaint with attached Exhibits and Defendant's Answer. Plaintiff's Exhibits include copies of the insurance Policy and the Underlying Complaint in the Underlying Civil Action. The Underlying Complaint and the Policy are therefore part of the pleadings that the Court may consider. See Fed. R. Civ. P 10(c). See also Sutton v. Royal Chevrolet-Oldsmobile-Pontiac-Buick, Inc., No. 03-1825, 2004 WL 90071, at *3 (E.D. Pa. Jan. 16, 2004). The Answer asserts self-defense as an affirmative defense and is considered part of the pleadings. The transcript of Malofiy's testimony from his criminal trial is attached as an exhibit to the Response in Opposition to the Motion for Judgment on the Pleadings. It is not a part of the pleadings and will not be considered in deciding the Motion pursuant to Rule 12(c). Moreover, as described *infra*, Pennsylvania law does not permit the transcript, as extrinsic evidence, to be considered by a court in deciding whether there is a duty to defend and indemnify under an insurance policy.

Investments, Inc. v. United States, No. 08-1972, 362 Fed. App'x 305, 307, 2010 WL 286550, at *1 n.4 (3d Cir. Jan. 26, 2010) (explaining that the district court's consideration of documents outside the pleadings converted the motion for judgment on the pleadings into a motion for summary judgment). A motion for judgment on the pleadings should be granted only if the moving party "clearly establishes that no material issue of fact remains to be resolved and that [it] is entitled to judgment as a matter of law." Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008).

## IV. DISCUSSION

### A. The Duty to Defend Generally

Under Pennsylvania law, an insurer's duty to defend is well settled. Erie Ins. Exchange v. Muff, 63 Pa. D. & C.4th 449, 471 (Pa. Com. Pl. 2003). "The obligation of an insurer to defend an action against the insured is fixed *solely* by the allegations in the underlying complaint." Erie Ins. Exch. v. Fidler, 808 A.2d 587, 590 (Pa. Super. Ct. 2002) (emphasis added); see also Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 896 (Pa. 2006). This rule, often times called the "complaint" rule or the "four corners" rule, requires a court to determine if an insurer has a duty to defend by examining only those allegations contained in the Underlying Complaint and comparing those allegations to the language of the Policy. Donegal, 938 A.2d 286 (quoting Gene's Restaurant Inc. v. Nationwide Ins. Co., 548 A.2d 246, 247 (Pa. 1988)) ("[The underlying] complaint . . . must be compared to the policy and a determination made as to whether, if the allegations are sustained, the insurer would be

required to pay resulting judgment. . . . [T]he language of the policy and the allegations of the complaint must be construed together to determine the insurers' obligation.").[8]

It is only the factual allegations and not the cause of action pled that determines policy coverage. QBE Ins. Corp. v. M&S Landis Corp., 915 A.2d 1222, 1225 (Pa. Super. Ct. 2007). Further, "[i]t is the face of the complaint and not the truth of the facts alleged therein which determines whether there is a duty to defend." D'Auria v. Zurich Ins. Co., 507 A.2d 857, 859 (Pa. Super. Ct. 1986). If the factual allegations in the underlying complaint describe an injury which *potentially* comes within a policy's coverage, the insurer has a duty to defend. Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 225 (3d Cir. Pa. 2005) (citing Pacific Indem. Co. v. Linn, 766 F.2d 754, 760 (3d Cir. 1985)). The duty to defend is different from and broader than the duty to indemnify. Sikirica, 416 F.3d at 225. Therefore, if there is no duty to defend, there is no duty to indemnify. Id.

---

[8] In the majority of states, courts are permitted to consider extrinsic evidence in determining whether an insurer has a duty to defend. Pennsylvania, however, follows the minority rule which restricts the duty to defend analysis to the "four corners" of the underlying complaint. See generally RANDY MANILOFF & JEFFREY STEMPEL, GENERAL LIABILITY INSURANCE COVERAGE: KEY ISSUES IN EVERY STATE 69-74, 89 (Oxford University Press, Inc. 2011) (explaining the split in authority with respect to whether a court is permitted to consider extrinsic evidence in determining whether an insurer has a duty to defend and noting that Pennsylvania follows the "four corners" rule) ("There is wide variation between courts over whether, and, if so, the extent to which, information contained outside the [underlying] complaint—so-called "extrinsic evidence"—can be considered when deciding if an insurer's duty to defend has been triggered. . . . In some states, the answer is simple—No. Courts are not permitted to consider extrinsic evidence when evaluating whether an insurer is obligated to defend. This is sometimes referred to as the 'complaint' rule, 'comparison test,' 'four corners' rule, or 'eight corners' rule. . . . While many states adhere to the 'four corners' rule about twice as many do not and have concluded that extrinsic evidence can be considered by a court in its duty to defend determination.")

12

Malofiy argues that actions taken in self-defense can be deemed accidental and therefore an "occurrence" under the Policy. Thus, by claiming that he acted in self-defense, Malofiy argues that what would otherwise be intentional conduct is potentially within the coverage of the Policy. (Doc. No. 26 at 14 (citing State Farm Fire & Cas. Co. v. Butchin, No. 95-26121996 WL 108730, at *3 (E.D. Pa. Mar. 12, 1992, 1996).

Plaintiff acknowledges Malofiy's self-defense argument, but asserts that the factual allegations in the Underlying Complaint are what controls coverage determination. (Doc. No. 21 at 24.) Plaintiff submits that the Underlying Complaint alleges intentional conduct, which is not an "occurrence" giving rise to the duty to defend.

Plaintiff has the more persuasive argument since the factual allegations in the Underlying Complaint describe an intentional injury, not an accidental injury resulting from self-defense. Moreover, Malofiy's self-defense argument is based on factual allegations which cannot be considered in determining Plaintiff's duty to defend because they are not included within the "four corners" of the Underlying Complaint.

### B. The Duty to Defend Under the Policy

Plaintiff's duty to defend is triggered when an insured is subject to civil liability for personal acts for which the Policy provides coverage. (Doc. No. 3-1 at 25.) The Policy provides coverage for an "occurrence resulting from negligent personal acts." (Id.) Occurrence, as defined by the Policy, means "bodily injury or property damage resulting from an accident." (Id.) Generally, an intentional act does not qualify as accidental in determining whether it is within the scope of an insurance policy. Donegal Mut. Ins. Co., 938 A.2d at 291. Where a willful and

malicious assault is alleged in the complaint, it is not an accident but rather an intentional act. Gene's Restaurant, Inc. v. Nationwide Ins. Co., 548 A.2d 246, 247 (Pa.1988). See also Westfield Ins. Co. v. Granese, No. 10-795, 2011 WL 346593, at *4-5 (E.D. Pa. 2011) (finding insurer did not have a duty to defend or indemnify insured in the underlying civil action against the insured for assault and battery).

Here, the Underlying Complaint alleges that Malofiy "did strike [Trioani], with great force, with a beer glass, causing severe blows to [Trioani's] head, face and other parts of his body causing [Trioani] to sustain the severe, disfiguring and disabling personal injuries." (Doc. No. 3-3 ¶ 20.) "Malofiy struck Plaintiff in and about the head and face and body wantonly, recklessly and with the malicious intent to injure." (Doc. No. 3-3 ¶ 31.) These allegations describe a willful and malicious assault, which is an intentional act. Gene's Restaurant, 548 A.2d at 247. An intentional act is not accidental. Id.; see also Donegal Mut. Ins. Co., 938 A.2d at 291. The Policy provides coverage for bodily injury resulting from the act of an insured only where the act of the insured was accidental. Thus, the Policy does not provide coverage for the bodily injury caused by Malofiy's intentional act and does not trigger Plaintiff's duty to defend.[9]

### C. Malofiy's Self-Defense Argument

Self-defense can negate intent and provide a defense in the case of intentional torts. Garris v. Thompson, No. 94-7307, 1997 WL 11308, at *2 (E.D. Pa. Jan. 10, 1997). However, since the duty to defend is determined by the factual allegations in the Underlying Complaint, a

---

[9] As noted in footnote 6, *supra*, since the Court finds that the incident alleged in the Underlying Complaint is not an occurrence and therefore does not trigger Plaintiff's duty to defend under the Policy, the Court need not address the merits of Plaintiff's arguments regarding the intended harm exclusion, the criminal acts exclusion, or an exclusion based on public policy.

potential self-defense claim must be evident from the face of the Underlying Complaint. Allstate Ins. Co. v. Key-Berthau, No. 08-768, 2008 WL 5382924, at *5 (E.D. Pa. Dec. 19, 2008). Here, although Malofiy claims he acted in self-defense, this argument is based on his testimony in the Underlying Criminal Action, not on the factual allegations of the Underlying Complaint.

In this case, an inference of self-defense cannot be drawn from the factual allegations of the Underlying Complaint. As stated above, the Underlying Complaint alleges intentional conduct, stating that Malofiy acted "with the malicious intent to injure" in striking Trioani with a beer glass. (Doc. No. 3-3 ¶ 31.) In addition, the Underlying Complaint specifically alleges: "The harmful and offensive contact caused by Defendant Francis Malofiy was not consented to by Plaintiff, was without provocation of any kind, and was not otherwise privileged." (Doc. No. 3-3 ¶ 33.) The Court cannot infer self-defense from these allegations.

Furthermore, although self-defense may negate the *mens rea* required to find an individual committed an intentional tort, a person acting in self-defense may still act intentionally. Utica First Ins. Co. v. Maclean, No. 08-1138, 2009 WL 415988, at *8 (E.D. Pa. Feb. 19, 2009) ("People who are defending themselves act intentionally-not negligently or accidently — in the interest of self-preservation. One acting in self-defense reasonably believes that one is threatened, and then responds to that belief — this constitutes an intentional act."). Therefore, even if the Court inferred that Malofiy acted in self-defense, the Court could still find that he acted intentionally.[10]

---

[10] Malofiy argues that given the difference between the version of the facts presented in the Underlying Complaint and those to which he testified in the Underlying Criminal Action, there exist genuine issues of material fact which preclude the Court from granting the Motion for Judgment on the Pleadings. Although the Court recognizes that the account of the incident in the

## D. The Negligence Language Used in the Underlying Complaint

Malofiy asserts that the allegations in the Underlying Complaint state he "acted negligently, carelessly, willfully, wantonly, recklessly, intentionally, and outrageously." (Doc. No. 26 at 12-13.) He argues that since negligence and carelessness qualify as an occurrence under the Policy, the Policy potentially applies and Plaintiff has a duty to defend. (Id.) Plaintiff argues that the terms "negligence" and "reckless" are mere characterizations, and the factual allegations in the Underlying Complaint show the injuries were caused by intentional acts of Malofiy. (Doc. No. 21 at 20, 22-23.)

---

Underlying Complaint and the account provided by Malofiy contain factual disputes which are material to Malofiy's liability in the Underlying Civil Action, the factual disputes are not material in determining whether Plaintiff's duty to defend is triggered here. As the Court has stated, the only documents the Court may consider in determining whether there is a duty to defend are the Policy and the Underlying Complaint. These two documents do not reveal any disputed fact. Only the version of the incident in the Underlying Complaint will be considered by the Court.

The Court recognizes that the result – a declaration that insurer has no duty to defend despite the existence of extrinsic evidence which shows that the insured *may* be entitled to coverage under the policy – seems harsh. In fact, this result has lead the majority states to reject the "four corners" rule in favor of permitting consideration of extrinsic evidence. For example, New York's highest court has noted: "[W]here the insurer is attempting to shield itself from the responsibility to defend despite its actual knowledge that the lawsuit involves a covered event, wooden application of the 'four corners of the complaint' rule would render the duty to defend narrower than the duty to indemnify-clearly an unacceptable result." Fitzpatrick v. Am. Honda Motor Co., 575 N.E.2d 90, 92 (N.Y. 1991). See generally RANDY MANILOFF & JEFFREY STEMPEL, GENERAL LIABILITY INSURANCE COVERAGE: KEY ISSUES IN EVERY STATE 70-71 (Oxford University Press, Inc. 2011) (explaining the rational of courts in rejecting the "four corners" rule). However, Pennsylvania does not follow the majority rule and excludes extrinsic evidence in determining the duty to defend. The instant case involves diversity of citizenship jurisdiction, and the Court is bound to follow Pennsylvania law and the minority rule.

The Underlying Complaint, when read as a whole, does not allege Malofiy acted negligently. Paragraphs 16, 20, and 24 through 29 of the Underlying Complaint use the language "negligently, carelessly, wantonly, willfully and recklessly" ("negligence language") to describe the conduct of defendant Bar Owners with respect to the selling and serving of alcoholic beverages to Malofiy. (Doc. No. 3-3 ¶¶ 8-16.) These paragraphs do not allege that Malofiy's actions were negligent.

"Negligence language" is omitted from the paragraphs of the Underlying Complaint (Id. ¶¶ 31-33) which refer solely to Malofiy. (Id. ¶¶ 16-17, 31-33.) The Underlying Complaint alleges that Malofiy "struck Plaintiff in and about the head and face and body wantonly, recklessly and with the malicious intent to injure Plaintiff." (Id. ¶ 16.) Additionally, the Prayer for Relief in Count Two uses the language "willful, reckless, wanton, outrageous, [and] unlawful conduct" to describe Malofiy's actions. (Id. at 19.) The facts in the Underlying Complaint cannot be read to allege that the injuries sustained could be the result of an accidental or negligent act of Malofiy.

While paragraphs 34 through 38 of the Underlying Complaint use "negligence language" when referring to all defendants collectively, in the context of the entire complaint, these paragraphs make clear the "negligence language" applies to the defendant Bar Owners, while the malicious and intentional language applies to Malofiy's act of striking the Underlying Plaintiff.

### E. Indemnification

The duty to defend is different from and broader than the duty to indemnify. Sikirica, 416 F.3d at 225. Therefore, if there is no duty to defend, there is no duty to indemnify. Id. Here,

because the Underlying Complaint and the Policy support a finding that there is no duty to defend, there is no duty to indemnify.

      F.      **The Summary Judgment Standard**

Finally, an issue arose during oral argument as to whether the Motion for Judgment on the Pleadings should be converted into one for summary judgment, which would permit the court to consider extrinsic evidence in deciding the duty to defend and indemnify.

Federal Rule of Civil Procedure 12(d) permits the Court to convert a motion for judgment on the pleadings under Rule 12(c) into a motion for summary judgment under Rule 56 when presented with matters outside the pleadings. Rule 12(d) provides:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Rule 12(d) permits a court to convert a motion for judgment on the pleadings into a motion for summary judgment when presented with matters outside the pleadings, but requires the court to give the parties a reasonable opportunity to present pertinent materials to the court prior to deciding the motion. Wolk v. Westport Ins. Corp., 276 Fed. App'x 129, 132-33 (3d Cir. 2008).

The Rule states a motion "must" be treated as one for summary judgment under Rule 56 when "matters outside the pleadings are presented to *and not excluded by the court*." See, e.g., Pincus v. Chubb Group of Ins. Cos., No. 08-1483, 2009 WL 839096, at *1 (E.D. Pa. Mar. 27, 2009) (converting a motion for judgment on the pleadings into a motion for summary judgment). Here, the Court has been presented with transcript from the Underlying Criminal Action to support Malofiy's contention in his Answer that he acted in self-defense. As noted above, this

evidence will not be considered in granting the Motion for Judgment on the Pleadings. Moreover, for the reasons that follow the Court declines to treat the Motion as one for summary judgment.

The determination of whether an insurer has a duty to defend is determined solely by considering the factual allegations in the Underlying Complaint and comparing them to the insurance policy. Donegal, 938 A.2d at 290-91. Therefore, even if the Court accepted and considered those matters presented outside the pleadings, such as Malofiy's testimony at the Underlying Criminal Action, and converted the Motion for Judgment on the Pleadings into a motion for summary judgment, the additional evidence presented would have no affect on the coverage determination since under Pennsylvania law the only relevant evidence that a court may consider in deciding whether there is a duty to defend is contained in the "four corners" of the Underlying Complaint and the Policy.

During oral argument on the Motion, the Court addressed whether the Motion should be converted into a motion for summary judgment. Both parties were given the opportunity to argue the issue and were permitted leave to file additional materials within 20 days, which both parties did. (Doc. Nos. 29, 31.) In doing so, the parties were given a reasonable opportunity to present all the material that would be pertinent to a motion for summary judgment.[11] However, since the Court has decided not to convert the Motion into one for summary judgment in view of the "four

---

[11] The Court notes that the materials pertinent to the motion for summary judgment – the Underlying Complaint and the Policy – were already before the Court prior to oral argument. Mehlman, 589 F.3d at 108 n.3 (a case at the summary judgment stage in which the court stated that the only facts relevant in determining whether an insurer's duty to defend is triggered under Pennsylvania law are those factual allegations contained in the underlying complaint).

corners" rule under Pennsylvania law, the conversion issue is moot. Evidence outside the pleadings cannot be considered and will be excluded.

**V.      CONCLUSION**

The Underlying Complaint alleges Malofiy struck Trioani in the head with the malicious intent to injure. This conduct is intentional. The Policy provides coverage for an occurrence, which is an accidental bodily injury. Since the factual allegations describe intentional conduct, the injury is not an occurrence covered by the Policy and Plaintiff has no duty to defend or indemnify Malofiy in the Underlying Civil Action. Therefore, the Court will grant the Motion for Judgment on the Pleadings (Doc. No. 21).

An appropriate Order follows.